UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CR00703 ERW |
| ) | |
| BOBBY LEE GARRETT, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Bobby Lee Garrett's Motion to Dismiss for Prosecutorial Misconduct, or in the Alternative, to Disqualify U.S. Attorney's Office [doc. #68] and Defendant's Motion to Transfer Case for Trial [doc. #70].

On December 11, 2008, Defendant was charged in a ten count Indictment with: theft of government funds (counts I and IV), conspiracy to distribute marijuana (count II), distribution of marijuana (count III), conspiracy to commit wire fraud - deprivation of right to honest services (count V), wire fraud - deprivation of right to honest services (count VI), making false statements (counts VII, VIII, and X), and obstruction of justice (count IX). Defendant filed the pending Motions on April 8, 2009. The Government filed its Response to these Motions on April 14, 2009, and Defendant filed his Reply on April 21, 2009. On April 22, 2009, this Court held a hearing to determine if it would be necessary to hold an evidentiary hearing regarding the Motions. The Court subsequently determined that such a hearing should be held, but set forth restrictions both on time and the type of evidence that could be presented. On May 15, 2009, the Parties filed a Stipulation for Evidentiary Hearing Regarding Bobby Lee Garrett's Motion to

Dismiss for Prosecutorial Misconduct, or in the Alternative, to Disqualify U.S. Attorney's Office and Motion to Transfer Case for Trial [doc. #104]. Both Parties filed additional affidavits and supplemental briefs in support of their respective arguments [doc. #s105, 106, 109, 110]. The Court finally held the evidentiary hearing on June 11, 2009. The issues presented by Defendant's Motions are fully briefed and properly before this Court.

## I. MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT, OR IN THE ALTERNATIVE, TO DISQUALIFY U.S. ATTORNEY'S OFFICE

In this Motion, Defendant seeks to have this Court dismiss the Indictment against him based on what he believes is misconduct on the part of the United States Attorney's Office. In the alternative, Defendant seeks to have this Court disqualify the entire United States Attorney's Office for the Eastern District of Missouri. Defendant alleges that the United States Attorney's Office has engaged in prosecutorial misconduct in two different ways: 1) through media commentary, and 2) through violation of *Brady v. Maryland*. The Court will address each of these allegations, in turn.

### A. MEDIA COMMENTARY

Defendant first argues that the United States Attorney at the time, Catherine Hanaway, inappropriately commented on his case in a February 23, 2009 St. Louis Post Dispatch article entitled "Dirty-cop cases taint the system." (Def.'s Ex. A, doc. #68-2, p.1-2). The article stated that "[t]he criminal corruption cases against two St. Louis police officers have thrown more than 1,000 criminal convictions into doubt." United States Attorney Hanaway was quoted as saying that her office had "put the brakes" on three cases before charges were filed as a result of the investigation into Defendant's conduct. Additionally, United States Attorney Hanaway

2

commented that "[b]efore we conclude that Carr or Garrett did not alter the outcome of the case, as long as I'm here, I will personally review all those." The article also included several quotes from Circuit Attorney Jennifer Joyce, including: "Needless to say, I'm outraged by the conduct of these officers." Defendant argues that these comments "were designed to prejudice this Defendant and will have the intended effect of prejudicing this Defendant by creating the impression in the minds of prospective jurors that Defendant is guilty of additional uncharged crimes and that this Defendant is a liar, whose testimony cannot be trusted." (Def.'s Mtn., doc. #68, p.2). Defendant also asserts that United States Attorney Hanaway intentionally neglected to mention that her office had been investigating Defendant and knew that they would bring criminal charges against him as early as August 7, 2007, but allowed him to stay on the streets nonetheless.

"'Because the drastic step of dismissing an indictment is a disfavored remedy, . . . a district court may properly dismiss an indictment only if the prosecutorial misconduct (1) was flagrant, . . . and (2) caused substantial prejudice to the defendant.'" *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992) (alterations in original) (quoting *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988)). "The Supreme Court, in addressing governmental misconduct, held '[a]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.'" *Id.* at 127 (alteration in original) (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1992)).

The Court finds that Defendant's argument based on media commentary must fail because he has failed to demonstrate the existence of flagrant prosecutorial misconduct. United States Attorney Hanaway's remarks cannot be considered misconduct, as they were fully within the

parameters of permissible conduct, as set forth by the Missouri Rules of Professional Conduct and the United States Attorneys Manual. Missouri Rule of Professional Conduct 4-3.8(f)[1] provides that a prosecutor in a criminal case should:

> except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused, and exercise reasonable care to prevent investigators, law enforcement personnel, employees, or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 4-3.6 or this Rule 4-3.8.

Additionally, Sections 1-7.500 and 1-7.520 of the United States Attorneys' Manual establishes that while a United States Attorney should not "furnish any statement or information that he or she knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding," he or she may make public "the public policy significance of a case" in which criminal charges have been brought, "[i]n the interest of furthering law enforcement goals."

Applying these rules to the statements made by United States Attorney Hanaway, it is clear that her comments regarding the manner in which her office is handling cases in which Defendant was involved do not amount to prosecutorial misconduct. Informing the general public how the United States Attorneys' Office intends to proceed in order to ensure that innocent persons are not in jail as a result of police wrongdoing is certainly in the interest of furthering law

---

[1]The Missouri Rules of Professional Conduct are relevant to this case, pursuant to Local Rule 83-12.02, which provides: "[t]he Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the Supreme Court of Missouri, as amended from time to time by that Court, except as may otherwise be provided by this Court's Rules of Disciplinary Enforcement."

enforcement goals. Moreover, United States Attorney Hanaway needed to inform the public that appropriate measures were being taken to remedy any wrong that was caused by the actions of Defendant. Her comments were measured and precise; most importantly, they were not made for the purpose of prejudicing the Defendant. Because the Court finds that United States Attorney Hanaway did not engage in flagrant prosecutorial misconduct, the Court need not reach the issue of substantial prejudice.[2] Defendant's Motion to Dismiss on the basis of prosecutorial misconduct through media commentary is denied.

### B. *BRADY V. MARYLAND* ISSUES

Defendant next argues that the Government has violated the disclosure requirements set forth by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Defendant states that the Government had knowledge of Defendant's alleged wrongdoings as early as August 7, 2007, but allowed him to remain on the streets, performing his duties as a police officer, including acting as the investigating officer in at least fifty cases. He argues that the Government did not disclose information about its investigation of Defendant and his alleged misconduct in any of those fifty or so cases. He goes on to state that "[t]he failure of the Government to provide the foregoing information to those other fifty (50) or more Defendants as well as Hanaway's removing some seven (7) state cases to Federal Court for prosecution creates an additional *Brady* issue in this case. If this information is not *Brady* material in those

---

[2]The Court notes that Defendant discusses statements made by Circuit Attorney Jennifer Joyce and suggests that United States Attorney Hanaway was acting "in concert with" Circuit Attorney Joyce. Defendant offers no support for this bald allegation and the Court fails to see the connection. Additionally, the Court finds that any public comments made by Circuit Attorney Joyce, who is not involved in the prosecution of this case, are wholly irrelevant to the issue of prosecutorial misconduct based on media commentary.

other fifty (50) or more cases then it is surely *Brady* material in this case which as of this date has not been disclosed to the defense."

"Under the Due Process Clause of the Fifth Amendment, the government has a duty to disclose evidence which is favorable to [the defendant] and material to the issue of his guilt." *United States v. Dreamer*, 88 F.3d 655, 658 (8th Cir. 1996) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). In order to establish a violation of this duty, a defendant must prove that: "(1) the government suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material to the issue of his guilt." *Id.* "Evidence is material for purposes of *Brady* analysis 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. 'A reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *United States v. Kime*, 99 F.3d 870, 882 (8th Cir. 1996) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "There is no duty to disclose evidence that is 1) neutral, speculative or inculpatory, 2) available to the defense from other sources, 3) not in the possession of the prosecutor, or 4) over which the prosecutor has no actual or constructive control." *United States v. Flores-Mireles*, 112 F.3d 337, 340 (8th Cir. 1997).

Defendant appears to argue that his case should be dismissed because there were *Brady* violations in the cases in which Defendant played a role in the investigation. There are several problems with this argument. First, Defendant does not have standing to assert the constitutional rights of others. The United States Supreme Court has clearly established that "[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 U.S. 249, 255 (1953). While this rule may be "outweighed by the need to protect the fundamental rights which would be denied," *id.* at 257, there has been no such

6

showing in this case. Second, it does not appear from the limited facts presented that there were any *Brady* violations. It is unclear to the Court exactly what Defendant proposes that the Government should have disclosed to the defendants. Prior to December 11, 2008, there was no indictment against Defendant, rather the United States Attorney's Office was merely aware of allegations against Defendant. Defendant suggests that the Government knew of the misconduct well before it sought the indictment against him. Merely because the indictment includes charges based on conduct that occurred on August 7, 2007 does not necessarily establish that the Government was even aware of that conduct when it occurred. Moreover, the Court is not aware of any case law that would require the Government to seek the indictment earlier than it did. Thus, the Court rejects Defendant's *Brady* arguments with respect to cases other than his own.

Additionally, the Court finds that the evidence Defendant claims is *Brady* material in his case is not material to the issue of his guilt. Defendant appears to claim that evidence of Defendant's involvement in cases in which there was no police misconduct is *Brady* material that must be disclosed. However, evidence of Defendant's lack of criminal wrongdoing cannot be considered material or even favorable to him; rather such evidence is of the neutral variety. Various courts have held that similar general information is not within the scope of *Brady*. *See, e.g.*, *United States v. Winograd*, 656 F.2d 279, 284 (7th Cir. 1981) ("evidence that [defendant] engaged in certain legal trades is generally irrelevant to the issue of whether he knew of other illegal trades"); *United States v. Dobbs*, 506 F.2d 445 (11th Cir. 1975) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant"); *United States v. Quintanilla*, 760 F. Supp. 687, 697 (N.D. Ill. 1991) (finding evidence of defendant's honesty, good character, and lack of involvement in criminal wrongdoing to be "irrelevant, for it tends to

demonstrate only that [defendant] did not commit similar crimes on other occasions"). Because Defendant cannot establish that evidence of his lack of criminal wrongdoing is material or favorable to him, the Court must find that there was no *Brady* violation.

Furthermore, Defendant's *Brady*-based motion is premature. "'The rule of *Brady* is limited to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense.'" *Kime*, 99 F.3d at 882 (quoting *Nassar v. Sissel*, 792 F.2d 119, 121 (8th Cir. 1986)). "*Brady* does not require pretrial disclosure as long as ultimate disclosure is made before it is too late for the defendant to make use of any benefits of the evidence.'" *Id.* (quoting *Nassar*, 792 F.2d at 121); *see also United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) ("Under the rule in our circuit *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial."). Trial in this case is currently scheduled for July 20, 2009. The Court is confident that the Government fully understands its obligations under *Brady* and the Government still has ample time to disclose *Brady* material, if any, to Defendant. The Court does not condone the use of deceptive techniques designed to delay disclosure; nor does it "approve of any government agent avoiding a forthright disclosure of relevant information." *Almendares*, 397 F.3d at 664. However, considering the procedural posture of this case, the Court must find that a *Brady* violation has not occurred.

The Court finds that there has been no *Brady* violation in this case and, thus, denies Defendant's Motion to Dismiss for prosecutorial misconduct through *Brady* violations.

### C. DISQUALIFICATION OF UNITED STATES ATTORNEY'S OFFICE

As an alternative to dismissal, Defendant seeks to have the Court disqualify the entire United States Attorney's Office for the Eastern District of Missouri on the basis of his previously analyzed allegations of prosecutorial misconduct. Disqualification of an entire United States Attorney's Office "'is a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *In re Grand Jury Subpoena of Rochon*, 873 F.2d 170, 176 (7th Cir. 1989) (quoting *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)); *see also United States v. Bolden*, 353 F.3d 870, 878-79 (10th Cir. 2003) ("The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary. . . . [E]very circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification." (internal quotations omitted)). The Court finds that the conduct of United States Attorney Hanaway in commenting on the public policy significance of Defendant's case certainly does not necessitate such a drastic remedy. Further, this Court found no *Brady* violations on the part of the Government, so Defendant's *Brady* allegations cannot support the disqualification of the entire United States Attorney's Office for the Eastern District of Missouri. Defendant's Motion to disqualify the United States Attorney's Office is therefore denied.

Additionally, Defendant states that he "anticipates that United States Attorneys Hal Goldsmith and Catherine Hanaway may be called as witnesses during the trial of this case." (Def.'s Support for Mtn. to Dismiss, doc. #69, p.6). Defendant correctly notes that federal courts "frown" on a Government prosecutor testifying in a case that he is also prosecuting. *United States v. Birdman*, 602 F.2d 547, 553 (3d Cir. 1979). However, federal courts also disfavor requests from defendants to call as a witness the United States Attorney prosecuting the case. In

9

such situations, "'the party seeking such testimony must demonstrate that the evidence is vital to his case, and that his inability to present the same or similar facts from another source creates a compelling need for the testimony.'" *United States v. Zeisman*, 409 F.3d 941, 950 (8th Cir. 2005) (quoting *United States v. Watson*, 952 F.2d 986 (8th Cir. 1991)). As of the present time, Defendant has not adequately demonstrated to the Court that the testimony of United States Attorney Hanaway or Assistant United States Attorney Goldsmith is vital to his case. While the Court does not necessarily preclude the possibility that either of these attorneys may be determined to be necessary witnesses at a later time, Defendant's Motion to disqualify them is denied.

## II. MOTION TO TRANSFER CASE FOR TRIAL

In this Motion, Defendant asserts that a number of inflammatory news media reports concerning Defendant have appeared in both print and electronic media since Defendant was indicted in this case on December 11, 2008. Defendant specifically cites to a February 23, 2009 St. Louis Post-Dispatch article entitled "Dirty-cop cases taint the system" and a December 19, 2008 St. Louis Post-Dispatch article entitled "Corruption complaints had followed officers." (Def.'s Exs. A & B, doc. #70-2). Defendant argues that because of the amount of prejudicial pretrial publicity in this case, "there exists in the United States District Court for the Eastern District of Missouri, Eastern Division, where this prosecution is now pending, so great a prejudice against the Defendant that the Defendant cannot obtain a fair and impartial trial." (Def.'s Mtn. to

Transfer, doc. #70, p.3). Thus, Defendant requests that this Court transfer this case for trial to another district court.[3]

Federal Rule of Criminal Procedure 21(a) provides that "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that *so great a prejudice* against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." (emphasis added). In order to determine if transfer is required by Rule 21(a), the Eighth Circuit has established a two-tier analysis:

> At the first tier, the question is whether pretrial publicity was so extensive and corrupting that a reviewing court is required to presume unfairness of constitutional magnitude. Because our democracy tolerates, even encourages, extensive media coverage of crimes such as murder and kidnapping, the presumption of inherent prejudice is reserved for rare and extreme cases. In all other cases, the change-of-venue question turns on the second tier of our analysis, whether the voir dire testimony of those who became trial jurors demonstrated such actual prejudice that it was an abuse of discretion to deny a timely change-of-venue motion.

*United States v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001) (internal citations and quotations omitted).

In this case, the Court finds that the pretrial publicity regarding Defendant thus far does not amount to the level required for a presumption of unfairness of a constitutional magnitude. There have only been a few articles that have directly dealt with Defendant and the charges pending against him, so the coverage of Defendant's case cannot be considered "extensive."

---

[3]In his Reply to the Government's Response [doc. #79], Defendant noted that "[b]ecause new prejudicial publicity has occurred concerning this case specifically as well as issues relating to the St. Louis Police Department generally which further portray officers of the St. Louis Metropolitan Police Department as corrupt, Defendant will file a supplemental motion for change of venue." The Court notes that no supplemental motion was filed. However, attached to the Parties' Stipulation for Evidentiary Hearing [doc. #104] were several news articles about Defendant and the St. Louis Metropolitan Police Department generally. The Court will presume that these articles were included in support of Defendant's Motion to Transfer.

Additionally, while Defendant is clearly of the belief that the articles are "invidious and inflammatory," the Court has reviewed the provided articles and finds to the contrary. The coverage of Defendant's case was fair and certainly not corrupt. The Court concludes that this case is not one of the "rare and extreme" cases in which inherent prejudice is presumed. *See, e.g.*, *United States v. Gamboa*, 439 F.3d 796, 815 (8th Cir. 2006); *United States v. Allee*, 299 F.3d 996, 1000 (8th Cir. 2002); *United States v. McNally*, 485 F.2d 398, 401 (8th Cir. 1973). The Court's conclusion does not change when considering the articles about general corruption within the St. Louis Metropolitan Police Department in conjunction with the articles about Defendant.

Because the Court finds that the pretrial media coverage of Defendant does not amount to the level required for a presumption of unfairness of a constitutional magnitude, the Court turns to the second tier, which examines voir dire testimony to determine if actual prejudice existed. Obviously, this case has not reached the voir dire stage so this inquiry is premature. When this case does reach the jury selection phase, the Court will properly consider Defendant's concerns regarding prejudice due to pretrial publicity. Now, however, Defendant's Motion to Transfer must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bobby Lee Garrett's Motion to Dismiss for Prosecutorial Misconduct, or in the Alternative, to Disqualify U.S. Attorney's Office [doc. #68] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Transfer Case for Trial [doc. #70] is **DENIED**.

**IT IS FURTHER ORDERED** that Motion to Quash Subpoenas [doc. #102] is **DENIED, as moot**.

Dated this 17th Day of June, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE